[Cite as *State v. Davis*, 2024-Ohio-2793.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240014 |
| | | C-240015 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-2206086 |
| | | B-2303433 |
| vs. | : | |
| CHRISTOPHER DAVIS, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: July 24, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Jeffrey J. Cutcher*, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** Christopher Davis entered guilty pleas to robbery, attempted felonious assault, having a weapon while under a disability, and witness intimidation. A recommended aggregate sentence of ten years was imposed by the trial court. Davis now appeals, arguing that his guilty pleas were not voluntary or intelligent. For the following reasons, we affirm the judgments of the trial court.

## Factual Background

**{¶2}** Christopher Davis was indicted in the case numbered B-2206086 for aggravated robbery, a felony of the first degree, with specifications, robbery, a felony of the second degree, two counts of felonious assault with specifications, both felonies of the second degree, and having a weapon while under a disability, a felony of the third degree. According to the bill of particulars, on December 7, 2022, Davis, and an unknown accomplice, approached the victim, Lee Ballard, and robbed him at gunpoint. Davis fired two shots at Ballard, striking him once in his leg.

**{¶3}** In the case numbered B-2303433, Davis was charged with intimidation of a witness for making numerous calls from the jail to third parties, directing them to contact Ballard to persuade him not to testify. The calls were made between January 5, 2023, and July 14, 2023. Both complaints were filed by police officer Delk.

**{¶4}** Davis entered into a plea agreement with the state and pled guilty to one count of robbery with a three-year gun specification, attempted felonious assault with a three-year gun specification, having a weapon while under disability, and witness intimidation, all third-degree felonies. Davis and the state agreed to a recommended aggregate sentence of ten years, which the court ultimately imposed. The plea agreement had been offered several months prior and expired that day.

{¶5} Prior to the court accepting the pleas, Davis asked the court if he could add a term to the plea agreement requiring him to be moved from "admin seg" so he could make calls from the jail to get his affairs in order before going to prison. After a brief recess, the court told Davis that his staff was informed by the sheriff's office that the decision to place him in "admin seg" was made by the sheriff, and the court did not have the authority to order the sheriff to move him. After another brief off-the-record discussion, Davis informed the court that he had paperwork from the jail stating that he had been placed in "admin seg" at the request of the prosecutor.

{¶6} The prosecutor explained that she had called the sheriff's department to relay her concerns that Davis continued to instruct people to contact the victim, and people were contacting the victim based on Davis's requests. The court informed Davis that he could not add that term to the plea agreement because the court did not have the power to enforce it. In response, Davis reassured the court that he wanted to accept the plea agreement.

{¶7} The trial court reviewed the plea form with Davis, and started to explain the constitutional rights that Davis would waive by pleading guilty. Davis interrupted the judge after observing extra officers enter the court. Davis's sister and niece were present in the court, and Davis was concerned that the officers were going to harass his niece or sister. Davis further explained that he heard police officer Delk talking to his niece, and that Delk had previously "threatened me about pressing charges against his mother if [he] didn't catch this case." Davis also accused Delk of "pressing charges on females for harassment." Davis wanted the court to know that his niece and sister had nothing to do with the offenses.

{¶8} The court reassured Davis that the four officers who were present

3

provided court security, and that the court did not request additional security and asked if he "want[ed] to go forward on the plea." Davis responded, "Yeah."

{¶9} The court continued to explain the constitutional rights that Davis would be waiving by pleading guilty. When asked, Davis affirmed that no threats or promises were made to induce his pleas, and the court accepted Davis's pleas, found him guilty, and proceeded to sentencing.

{¶10} In mitigation, Davis apologized to the court and explained that "it was a lot going on," including that Davis was questioned about a murder. He again complained that Delk kept threatening him and talked about charging his mother, and that the state waited seven months to charge him with intimidation. Davis claimed that he did not have sufficient time to prepare a defense and admitted that he would have been found guilty if he proceeded to trial.

{¶11} Immediately, the court asked Davis if he wanted to accept the plea deal. The court informed him that he could have a fair trial with 12 fair jurors. Davis again stated that he wanted to accept the plea agreement, and the court imposed the recommended aggregate sentence.

{¶12} Davis now appeals, and in two assignments of error, he contends that his pleas were not voluntary because the court did not address Davis's allegations of threats by Delk and his claim that he had insufficient time to prepare a defense, and the pleas were not intelligent because he was charged with murder three days after his guilty pleas.

## The Pleas were Voluntary

{¶13} In his first assignment of error, Davis contends that the trial court erred by accepting his guilty pleas when the pleas were not voluntarily made under Crim.R.

11(C).

**{¶14}** A guilty plea is constitutionally valid only if it is entered knowingly, voluntarily, and intelligently. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). To ensure a guilty plea is made knowingly, intelligently, and voluntarily, the trial court must engage the defendant in a colloquy pursuant to Crim.R. 11(C) and inform him of certain constitutional and nonconstitutional rights. *Id.* The trial court must inform the defendant that by pleading guilty, he is waiving the following constitutional rights: the privilege against self-incrimination, the right to a jury trial, the right to confront his accusers, and the right of compulsory process of witnesses. Crim.R. 11(C)(2)(c). The trial court must also inform the defendant of certain nonconstitutional rights, including the nature of the charges, the maximum penalty involved, the eligibility of the defendant for probation or community control, and the effect of the plea. Crim.R. 11(C)(2)(a) and (b).

**{¶15}** "To determine whether a plea was entered knowingly, voluntarily, and intelligently, 'an appellate court examines the totality of the circumstances through a de novo review of the record.' " *State v. Mitchell*, 1st Dist. Hamilton No. C-210623, 2023-Ohio-724, ¶ 11, quoting *State v. Illing*, 1st Dist. Hamilton No. C-220166, 2022-Ohio-4266, ¶ 12.

**{¶16}** Here, Davis alleges that the court failed to comply with Crim.R. 11(C)(2)(a) by failing to determine if Davis's statements regarding threats made by Delk impacted the voluntariness of the pleas. After discussing the alleged threats with the court, Davis assured the court that he wanted to proceed with the pleas. The court continued to explain the rights being waived and ensured that Davis understood the maximum penalties involved. When asked whether any threats or promises induced

the pleas, Davis replied, "No sir."

**{¶17}** During the sentencing phase, Davis again complained that Delk kept threatening him and talked about charging his mother. After claiming that he did not have sufficient time to prepare a defense, despite the fact that the plea hearing occurred almost a year after the charges for shooting and robbing Ballard and five months after the witness-intimidation charge was filed, Davis acknowledged that he would have been found guilty if he proceeded to trial. Although the court had already accepted the guilty pleas and found Davis guilty, the court immediately asked Davis if he wanted to continue with the guilty pleas. Davis again represented to the court that he wanted to plead guilty, and the court proceeded to impose the jointly recommended aggregate sentence.

**{¶18}** A review of the record establishes that the court explicitly determined that Davis still wanted to proceed with the pleas despite his complaints about Delk and his alleged insufficient time to prepare for trial. The court repeatedly gave Davis the opportunity to reject the plea agreement, and each time, Davis assured the court he wished to plead guilty. Moreover, the court separately confirmed that Davis's pleas were not induced by any threats or promises. Based on the totality of the circumstances, Davis's pleas were entered voluntarily.

**{¶19}** We overrule the first assignment of error.

### The Pleas were Intelligent

**{¶20}** Next, Davis argues that his pleas were not intelligently made because he was unaware that he would be charged with aggravated murder three days after his pleas and sentences. He further claims that had he known the charges were forthcoming, he would not have pleaded guilty. Davis concedes that at the time he

entered the pleas, the court committed no error because the court was unaware that additional charges were forthcoming.

**{¶21}** The existence of the new charges is not demonstrated in this record. *See* App.R. 16(A)(7) (requiring appellant to identify parts of the record on which appellant relies). Accordingly, we overrule the second assignment of error.

### Conclusion

**{¶22}** Having overruled Davis's two assignments of error, we affirm the judgments of the trial court.

Judgments affirmed.

**BOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:
    The court has recorded its own entry this date.